1   **GUTRIDE SAFIER LLP**
    ADAM J. GUTRIDE (State Bar No. 181446)
2   SETH A. SAFIER (State Bar No. 197427)
    KRISTEN SIMPLICIO (State Bar No. 263291)
3   835 Douglass Street
    San Francisco, California 94114
4   Telephone: (415) 336-6545
    Facsimile:  (415) 449-6469
5
6   Attorneys for Plaintiff
7
8                   UNITED STATES DISTRICT COURT
9                 NORTHERN DISTRICT OF CALIFORNIA
10                     SAN FRANCISCO DIVISION
11

| | |
|---|---|
| 12  SCOTT KOLLER, AN INDIVIDUAL, ON BEHALF OF HIMSELF, THE GENERAL PUBLIC, AND THOSE 13  SIMILARLY SITUATED, | CASE NO. 12-cv-00117 (CRB) PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) |
| 14      Plaintiff, | |
| 15            v. | Date:  April 6, 2012 Time:  10:00 am |
| 16 | Place:  Courtroom 8 Judge:  Hon. Charles R. Breyer |
| 17  WEST BAY ACQUISTIONS, LLC; CHRISTOPER RUNCI, LLC; CHRISTOPHER RUNCI; TODD HAR- 18  RAKA, inclusive, | |
| 19                  Defendants. | |
| 20 | |

21
22
23
24
25
26
27
28

1

**TABLE OF CONTENTS**

2

I.    INTRODUCTION ................................................................................................3

3

II.   STATEMENT OF FACTS.................................................................................4

4

III.  ARGUMENT ......................................................................................................6

5

      A.   Legal Standard For Motion To Dismiss............................................6

6

      B.   Plaintiff Adequately Pleads Each Cause Of Action. ......................7

7

            1.   Plaintiff Adequately Pleads Violation Of The FDCPA. ...................7

8

                 a.   West Bay Knowingly Attempted To Collect Invalid Debts.................8

9

                 b.   West Bay Deceptively Claimed The Debt Was Owed to It. ...............12

10

                 c.   Defendant Deceptively Implied Negative Credit Reporting. ...............14

11

            2.   Plaintiff's Rosenthal Act Claim is Properly Plead. .........................15

12

            3.   Plaintiff Has Standing to Assert A Violation of the UCL..............16

13

      C.   If Any Allegations Are Insufficient, Leave To Amend Should Be Granted. ..............18

14

IV.   CONCLUSION...................................................................................................19

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

### CASES

3

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) ..................................................7

*Bleich v. The Revenue Maximization Group*, 233 F. Supp. 2d 496 (E.D.N.Y. 2002) ...............10

4

*Brown v. Solomon and Solomon*, 694 N.Y.S 2d 843 (1999)........................................................11

5

*Burchalewski v. Wolpoff & Abramson, LLP*, 2008 U.S. Dist. LEXIS 73625
    (W.D.N.Y. Sept. 8, 2008) ........................................................................................................13

6

*Canlas v. Eskanos & Adler, P.C.*, 2005 U.S. Dist. LEXIS 43380 (N.D. Cal. July 6,
    2005) ........................................................................................................................................14

7

*Chan v. N. Am. Collectors, Inc.*, 2006 U.S. Dist. LEXIS 13353 (N.D. Cal. Mar. 24,
    2006) ........................................................................................................................................13

8

*Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1166 (9th Cir. 2006) ...................7, 9, 11

9

*Conley v. Gibson*, 355 U.S. 41 (1957) ..........................................................................................6

10

*Davis v. Scherer*, 468 U.S. 183 (1984) .........................................................................................7

11

*DeSoto v. Yellow Freight Sys.*, 957 F.2d 655 (9th Cir. 1992)......................................................18

*Donohue v. Quick Collect, Inc.*, 592 F.3d 1027 (9th Cir. 2010)..................................................10

12

*Dorner v. Commercial Trade Bureau*, 2008 U.S. Dist. LEXIS 70425 (E.D. Cal.
    Apr. 10, 2008) ....................................................................................................................12, 13

13

*Ducrest v. Alco Collections, Inc.*, 931 F.Supp. 459 (M.D. La. 1996)..........................................11

14

*Dunlap v. Credit Protection Ass'n, L.P.*, 419 F.3d 1011 (9th Cir. 2005) ...................................15

15

*Forsberg v. Fid. Nat'l Credit Servs.*, 2004 U.S. Dist. LEXIS 7622 (S.D. Cal. Feb.
    25, 2004) .............................................................................................................................13, 14

16

*Hooper v. Capital Credit & Collection Servs.*, 2003 U.S. Dist. LEXIS 25943 (D.
    Or. Nov. 24, 2003) ..................................................................................................................11

17

*Hosseinzadeh v. M.R.S. Assocs.*, 387 F. Supp. 2d 1104 (C.D. Cal. 2005)................................16

18

*Howe v. Readers Digest*, 686 F. Supp. 461 (S.D.N.Y. 1988) .....................................................11

19

*Hubbard v. National Bond & Collections Associates*, 126 BR. 422 (D. Del. 1991) .................11

20

*In re Apple Computer Secs. Litig.*, 886 F.2d 1109 (9th Cir. 1989)..............................................14

*Isham v. Gurstel, Staloch & Chargo, P.A.*, 738 F. Supp. 2d 986 (D. Ariz. 2010)......................13

21

*Janti v. Encore Capital Group, Inc.*, 2010 U.S. Dist. LEXIS 78199 (S.D. Cal. Aug.
    3, 2010) ....................................................................................................................................18

22

*Jenkins v. Heintz*, 124 F. 3d 824 (7th Cir. 1997) ........................................................................11

23

*Jerman v. Carlisle, et al*, 130 S.Ct. 1605 (2010) .........................................................................7

24

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011) ...................................................17, 18

25

*Lindbergh v. Transworld Sys.*, 846 F. Supp. 175 (D. Conn. 1994)..............................................10

*McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939 (9th Cir.
    2011) ..........................................................................................................................................9

26

*McStay v. I.C. Systems, Inc*. 174 F.Supp 2d 42 (S.D.N.Y. 2001) ...............................................11

27

*Moya v. Hocking*, 10 F.Supp.2d 847 (W.D. Mi. 1998)...............................................................11

28

*Palmer v. I.C. Systems*, 2005 U.S. Dist. LEXIS 27946 (N.D. Cal. Nov. 8, 2005) .................9, 10

1

*Palmer v. Stassinos*, 348 F. Supp. 2d 1070 (N.D. Cal. 2004) ................................................... 15

*Peloza v. Capistrano Unified Sch. Dist.*, 37 F.3d 517 (9th Cir. 1994) ......................................... 7

*Reichert v. Nat'l Credit Sys.*, 531 F.3d 1002 (9th Cir. 2008) ................................................. 10

*Riley v. Giguiere*, 631 F. Supp. 2d 1295 (E.D. Cal. 2009) ....................................................... 7

*Robinson v. Managed Accounts Receivable Corp.*, 654 F. Supp. 2d 1051 (C.D. Cal. 2009) .................................................................................................................... 16

*Russell v. Equifax, A.R.S.* 74 F.3d 30 (2d Cir. 1996) ................................................................. 12

*Scheuer v. Rhodes*, 416 U.S. 232 (1974) ..................................................................................... 7

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393 (9th Cir. 1986) .................. 18

*So. Cal. Housing Rights Ctr. v. Los Feliz Towers Homeowners Ass'n*, 426 F. Supp. 2d 1061 (C.D. Cal. 2005) .......................................................................................................... 18

*Swanson v. S. Or. Credit Serv., Inc.*, 869 F.2d 1222 (9th Cir. 1988) ........................................ 14

*Tourgeman v. Collins Fin. Servs.*, 2011 U.S. Dist. LEXIS 81070 (S.D. Cal. July 26, 2011) .................................................................................................................... 13

*Tourgeman v. Collins Fin. Servs., Inc.*, 2009 U.S. Dist. LEXIS 127542 (S.D. Cal. 2009) ...................................................................................................................... 18

*Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305 (2009) ............................................... 18

*Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136 (9th Cir. 2003) ..................................... 7

2

3

4

5

6

7

8

9

10

11

12

13

**STATUTES**

15 U.S.C. § 1692, et seq .................................................................................................. passim

Cal. Bus. Prof. Code § 17200 ......................................................................................... passim

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1    Plaintiff respectfully submits this Opposition to Defendant's Motion to Dismiss Plaintiff's

2    Complaint ("Mot.").  (Dkt.# 13.)

3    **I.      INTRODUCTION**

4    Defendant West Bay Acquisitions, LLC ("Defendant" and "West Bay") is a debt collec-

5    tor.  On December 6, 2011, West Bay sent Plaintiff Scott Koller ("Plaintiff" or "Koller") a letter

6    in which it falsely claimed that he owed $49.98 in fees for videos rented from Hollywood Video

7    in March 2010.  (Complaint, (Dkt.# 1), ¶ 21.)  The letter also made mutually inconsistent claims

8    about the owner of the debt, saying that "West Bay Acquisitions, LLC is the authorized agent for

9    the legal successor to Hollywood Video" and that the "debt is owed to West Bay Acquisitions,

10   LLC."  (Id.)   The letter implied that if Mr. Koller did not take action to pay the claimed debt, fur-

11   ther collection efforts would ensue, including possibly reporting the past due amount to credit re-

12   porting agencies and/or initiating legal action.  For example, it stated that it was a "formal

13   demand upon you for payment in full of this debt" and that payment would "make continued col-

14   lection efforts unnecessary;" it was formatted like a traditional collections demand; and no where

15   did it state that West Bay would refrain from legal action or credit reporting.

16   On January 5, 2011, Plaintiff filed a complaint against West Bay and three other defen-

17   dants who are its principals, alleging violation of the federal Fair Debt Collection Practices Act,

18   the California Rosenthal Fair Debt Collections Practices Act, and California's Unfair Competition

19   Law.  The same day, Plaintiff sent Defendants a letter disputing the validity of the debt and ask-

20   ing for "verification of Mr. Koller's alleged debt, the name and address of the original creditor,

21   and the name and address of the current owner the alleged debt."  (Declaration of Seth A. Safier

22   in Support of Opposition to Motion to Dismiss ("Safier Decl."), Ex. B.)   Defendants did not re-

23   spond.   (Id., ¶ 3.)

24   The three defendants other than West Bay answered on March 1, 2012.   (Dkt.## 11-13.)

25   West Bay moves to dismiss.  It contends that it is an "innocent" debt collector merely "starting a

26   conversation" with Plaintiff and those similarly situated.  West Bay further suggests that Plain-

27   tiff's only gripe is that he does not owe the debt.

28   While it is true that no debt actually is owed, that is not Plaintiff's only complaint.  To the

1    contrary, Plaintiff alleges that West Bay is involved in a widespread, illegal debt collection

2    scheme that already has drawn the attention of (and suit by) the Attorney Generals from all 50

3    States.  He further alleges that West Bay is knowingly violating a recent order from the United

4    States Bankruptcy Court in the Eastern District of Virginia (which is overseeing the bankruptcy

5    of Hollywood Video) that expressly prohibits it from engaging in the collection practices at issue

6    in this case.   West Bay does not deny these allegations.  Instead, it attempts to justify its wrong-

7    ful acts by positing that not even the least sophisticated consumer should (or could) have been

8    deceived.  West Bay is mistaken.

9    **II.     STATEMENT OF FACTS**

10        On April 30, 2010, all U.S. Hollywood Video stores announced that they would file for

11   Chapter 7 bankruptcy in May 2010.  (Dkt.# 1, ¶ 21.)  A trustee—First Lien Term Lenders Liqui-

12   dating Trust ("Trustee")—was appointed and began to liquidate Hollywood Video's purported

13   "assets."  Among these "assets" were internal records showing that approximately 3.3 million

14   former owed late fees and other charges totaling over $244 million ("Customer Accounts").  (Id.,

15   ¶¶ 21-22.)

16        In late 2010, the Trustee contracted with several debt collectors to collect the Customer

17   Accounts.  (Id., ¶¶ 23-24.)   At least one of the debt collectors, National Credit Solutions, made

18   negative credit reports to TransUnion and Experian for approximately 500,000 consumers

19   without prior notice to the consumers that debts were owed.  It included in the reports not only

20   purportedly owed late fees and product charges for non-return of videos, but double charges—

21   seeking both a late fee and a product charge for the same video—plus additional "collection

22   fees." (Id., ¶ 25.)   Following a massive outcry, the Attorneys General of all 50 states took action,

23   and in May 2011, entered into a Stipulation and Agreed Order ("Order"), which was approved by

24   Chief Judge Douglas O. Tice, Jr., United States Bankruptcy Judge (E.D. Va.)  (Id., ¶ 25; Safier

25   Decl., Ex. A.)

26        As reflected in the Order, the Attorneys General had raised a number of objections and

27   concerns about the collection activities related to the Customer Accounts, including, without

28   limitation, the following:  (a) lack of notice to consumers regarding the amounts allegedly owed;

(b) negative credit reporting regarding amounts allegedly owed; (c) demands for high collection fees; (d) double charging whereby a customer is charged the replacement cost of an unreturned item as well as for late charges associated with that unreturned item; (e) issues regarding the validity and enforceability of some of the underlying debts themselves; (f) lack of supporting documentation to substantiate the alleged debts; and (g) consumer complaints directly challenging underlying amounts alleged to be due and owing.  (Dkt.# 1, ¶ 27; Safier Decl., Ex. A.)

The Order provided that the Trust, and all debt collectors acting on its behalf, expressly agree that they will comply with the provisions of the Fair Debt Collection Practices Act, and all applicable state laws.  (Dkt.# 1, ¶¶ 28-30, 32; Safier Decl., Ex. A.)  To the extent that West Bay purchased any Customer Accounts, that purchase, pursuant to the Order, included West Bay's agreement to be subject to the terms of the Order as if it were the Trustee, including all limitations regarding the use of third-party collection agencies.   (Id.)  With respect to Customer Accounts, the Order provided that West Bay may not:

- ✓ make reports to any credit reporting agency at any time;

- ✓ "state, suggest, **imply** or otherwise represent to any customer that their failure or refusal to pay the Customer Account could result in adverse credit reporting";

- ✓ add collection fees or interest charges to principal amounts owed;

- ✓ charge both late fees and replacement charges for the same item (but rather, **may only charge the lesser of the two charges** for any given rental item); or

- ✓ **charge any product charge where that charge is the only fee reflected** on the Customer Account for that transaction.

(Dkt.# 1, ¶ 28; Safier Decl., Ex. A (emphasis added).)

Sometime after May of 2011, Defendants nevertheless began sending collection letters to Plaintiff and others, related to the Customer Accounts, in violation of the Order.  (Dkt.# 1, ¶ 34.)  For example, the letter from West Bay to Plaintiff listed two movies and a rental date of March 30, 2010.  The letter noted that these movies "contributed to this debt" and that the "total amount due may include some titles not listed here."  The letter did not include any accounting of how the $49.98 purportedly owed was determined, nor did it say that it was using only the lesser of the late fee and the product charge, nor that it was excluding collection fees or interest charges, nor

that Plaintiff's account included items other than product charges.  (Id., ¶ 43.)  In fact, the $49.98

allegedly due was only product charges, which are not collectible under the Order as they are only

fees reflected in his account.  (Id. ¶ 34.)  The letter also did "imply… that… failure or refusal to

pay…could result in adverse credit reporting," because it was formatted like a traditional debt

collection letter, it also stated that it was a "formal demand upon you for payment in full of this

debt" and that payment would "make continued collection efforts unnecessary," and it did not say

that West Bay would refrain from adverse credit reporting.   (Id., ¶¶ 28, 34-35, 63-64, 66.)  Plain-

tiff contends that in violating the Order, Defendants engaged in practices forbidden by the

FDCPA, Rosenthal Act, and UCL.

     Beyond the violations of the Order, Plaintiff alleges other violations of the FDCPA,

Rosenthal Act and the UCL.  First, the letters sent to him and others misrepresented the owner of

the debt.  (Id. ¶¶ 37, 42, 63, 66-67, 70(c).[1])  Second, Defendants, or persons acting on their behalf,

repeatedly called him, and those similarly situated, in an unfair and harassing manner in order to

collect the alleged debt.  (Id., ¶ 44.)   Third, when he and others asked Defendants for additional

information, such as an accounting or verification, of the alleged debt, Defendants failed to an-

swer the phone or provide verification by mail.  (Id. ¶ 35.)  Fourth, when customers complained

to Defendants that the Customer Account is mistaken, not owed or incorrect, they persisted in

their unlawful collection efforts without completing a diligent review of the Customer Account.

(Id.)  Finally, Defendants did not conduct any review of the Customer Account prior to initiating

collection efforts.  (Id.)

## III.   ARGUMENT

### A.   Legal Standard For Motion To Dismiss

     Under Federal Rule of Civil Procedure 12(b)(6), a district court may dismiss a complaint

only if it fails to state a claim upon which relief can be granted.   A motion to dismiss should only

be granted if it appears beyond a doubt that the plaintiff "can prove no set of facts in support of

his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  The

---

[1] The paragraph numbering of the Complaint was corrupted.  Plaintiff apologizes for the confu-
sion.

1   question is not whether a plaintiff will prevail in the action, but whether he is entitled to offer evi-

2   dence in support of its claim.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), overruled on

3   other grounds, *Davis v. Scherer*, 468 U.S. 183 (1984).

4          District courts are obligated to accept a plaintiff's allegations as true and construe them in

5   the light most favorable to plaintiff.  *Id*.  To survive a Rule 12(b)(6) motion, a complaint need not

6   contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief

7   that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964, 1974 (2007);

8   *see also Peloza v. Capistrano Unified Sch. Dist*., 37 F.3d 517, 521 (9th Cir. 1994) (courts must

9   assume that all general allegations "embrace whatever specific facts might be necessary to sup-

10  port them"); *Warren v. Fox Family Worldwide, Inc*., 328 F.3d 1136, 1140 (9th Cir. 2003) (at

11  pleading stage, plaintiffs "need only show that the facts alleged, if proved, would confer standing

12  upon him.") (citations omitted).

13      **B.      Plaintiff Adequately Pleads Each Cause Of Action.**

14              **1.      Plaintiff Adequately Pleads Violation Of The FDCPA.**

15          The Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. § 1692, et seq., generally

16  prohibits "debt collectors" from resorting to "false, deceptive, or misleading representation or

17  means" in connection with the collection of any debt.  15 U.S.C. § 1692(e)(10).  Congress in-

18  tended the FDCPA to "eliminate abusive debt collection practices by debt collectors ... and to

19  promote consistent state action to protect consumers against debt collection abuses." *Schlegel v.*

20  *Wells Fargo Bank, N.A*., No. C 10-05679, 2011 U.S. Dist. LEXIS 71604 at *2 (N.D. Cal. July 5,

21  2011), *quoting* 15 U.S.C. § 1692.  "[T]he purpose of the FDCPA is to protect consumers broadly

22  from improper practices and the statute is to be interpreted liberally for this purpose." *Riley v.*

23  *Giguiere*, 631 F. Supp. 2d 1295, 1305 (E.D. Cal. 2009), *citing Clark v. Capital Credit & Collec-*

24  *tion Servs., Inc*., 460 F.3d 1162, 1171, 1175 (9th Cir. 2006).

25          To plead entitlement to relief under the FDCPA, Plaintiff must allege facts that (1) Defen-

26  dant was collecting debt as a debt collector, and (2) its debt collection actions were violative of a

27  federal statute.  *See Jerman v. Carlisle, et al*, 130 S.Ct. 1605, 1606 (2010), *citing* 15 U.S.C. 1692,

28

1    et seq.   Plaintiff pleads violations of sections 1692e, 1692e(2), 1692e(5), 1629e(8),[2] 1692e(10)

2    and 19623(14).   Section 1692e generally prohibits the use of "false, deceptive, or misleading rep-

3    resentations or means in connection with the collection of any debt."  15 USC § 1692e.  The sub-

4    sections of section 1692e enumerate specific types of debt collection practices and activities that

5    violate the FDCPA—i.e., that are false, deceptive and/or misleading.[3]

6           West Bay does not dispute that it is a "debt collector" as defined by the FDCPA.  *See* 15

7    USC § 1692a(6).  It argues, however, that Plaintiff did not adequately allege that West Bay vio-

8    lated any portion of the FDCPA.  This argument is without merit.

9                        **a.       West Bay Knowingly Attempted To Collect Invalid Debts.**

10          West Bay first argues that Plaintiff's FDCPA claims fail because he does not plead any

11   facts to indicate that West Bay knew or should have known that the debt was invalid.  West Bay

12   contends that it was entitled to rely on its client—the Trustee—as to the amount of the debt, and

13   that Plaintiff is barred from suing because he did not dispute the debt before filing suit.  The ar-

14   gument fails because Plaintiff is not obligated to plead knowledge or intent under the FDCPA.

15   Moreover, he does plead (repeatedly) that West Bay knew (or should have known) that the debt

16   was invalid.  He specifically alleges, for example, that the Order placed West Bay on notice that

17   the debt was invalid, *before* West Bay took steps to collect it.  Further, to the extent that West

18   Bay is asserting a bond fide error defense, the reasonableness of any procedures it may have had

19   in place to determine the validity of the debt are questions of fact that cannot be resolved on mo-

20   tion to dismiss.  Finally, contrary to West Bay's contention, there is no requirement that Plaintiff

21   _____
     [2] This was mistakenly pled as section 1692e(7).

22   [3] Section 1692e(2) prohibits the "The false representation of—(a) the character, amount, or legal
23   status of any debt and (b) the services rendered or compensation which may be lawfully received
     by [the debt collector]." 15 USC § 1692e(2).  Section 1692e(5) prohibits "The threat to take any
24   action that cannot legally be taken or that is not intended to be taken."  15 USC § 1692e(5).  Sec-
     tion 1629e(8) prohibits "Communicating or threatening to communicate to any person credit in-
25   formation which is known or which should be known to be false, including the failure to
     communicate that a disputed debt is disputed." 15 USC § 1692e(8).  Section 1692e(10) prohibits
26   "The use of any false representation or deceptive means to collect or attempt to collect any debt
     or to obtain information concerning a consumer." 15 USC § 1692e(10). Section 1962e(14) pro-
27   hibits "The use of any business, company, or organization name other than the true name of the
     debt collector's business, company, or organization."  15 USC § 1692e(14).

28

dispute the validity of the debt before filing suit.  And even if Plaintiff were barred from com-plaining about the *validity* of the debt, his FDCPA claims could still proceed as to all of the other *false, misleading and deceptive collection efforts* undertaken by West Bay to collect the debt.

It is well established that, in this Circuit, the FDCPA is a strict liability statute; there is no mental state required to violate it.  *See McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 948 (9th Cir. 2011); *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1175 (9th Cir. 2006).  In any event, Plaintiff does, in fact, plead that West Bay knew (or should have known) that the debt was invalid; he specifically states that "Defendants knew that the debt could not legally be collected as it was a product charge that was the only fee reflected on Plaintiff's account.  In fact, Defendants did not conduct any investigation to determine whether Plaintiff owed $49.98." (Dkt.# 1, ¶ 34.)  In other words, Plaintiff pleads that West Bay, having been pro-vided with the Order, knew that it could not collect stand alone product charges, yet it still at-tempted to do so in violation of the FDCPA, the Order and the UCL.  (Id., ¶¶ 28, 36, 63.)

Further, there is no need to allege that West Bay's collection efforts continued after Plain-tiff disputed the debt.  West Bay cites three district court cases, none of which support its argu-ment.  At best, one of the cases (from outside this Circuit) holds that a plaintiff cannot prove a violation of section 1692g unless he first disputed the debt, but it does not bar Plaintiff from pleading (and proving) violations of section 1692e, et seq.  Here, Plaintiff has only pled violations of section 1692e, et seq, so the holdings are inapposite.  And one of the cases (the only one from this District) rejects the argument completely, holding that a plaintiff can plead violations of both section 1692g and 1692e even without previously disputing the debt.

The most relevant case is *Palmer v. I.C. Systems*, 2005 U.S. Dist. LEXIS 27946 (N.D. Cal. Nov. 8, 2005).  There, the court stated that "Section 1692g(b)…does not set forth a manda-tory procedure as a prerequisite to filing a suit alleging that a debt collector sought to collect an invalid debt. A plaintiff need not dispute a debt in writing for that dispute to be governed by the FDCPA."  *Id*., at *13-14. West Bay, however, relies on the Court's statement that, because "the consumer never contacted the collector to contest the debt before the final collection attempt, plaintiff cannot assert a cause of action under the FDCPA *solely* based upon the debt collector's

1  attempt to collect an invalid debt." *Id.*, at \*15.  (emphasis supplied.)  But here, Plaintiff is not bas-

2  ing his action **solely** on an attempt to collect an invalid debt but also on the false statement about

3  ownership of the debt, the use of a misleading collections form, the failure to investigate even af-

4  ter being on notice by the Order that the debt was likely invalid, the inclusion of debt (for a prod-

5  uct charge) in violation of the Order, and the implication (in violation of the Order) that credit

6  reporting would ensue.  (Dkt.# 1, ¶¶ 26-48, 63.)  *Palmer* further held that if the plaintiff fails to

7  dispute the debt in writing, the only effect is that the debt may be assumed by the collector to be

8  valid "if the debt collector shows by a preponderance of the evidence that the violation was not

9  intentional and resulted from a bona fide error notwithstanding the maintenance of procedures

10  reasonably adapted to avoid such an error." *Id.* at 14-15, *quoting* 15 U.S.C. § 1692k(c).  Review-

11  ing the facts regarding the defendant's procedures, the *Palmer* court concluded that partial sum-

12  mary judgment should be granted to defendant on the bona fide error defense.  But the court went

13  on to grant partial summary judgment for *plaintiff* on the ground that the collection letter was

14  misleading in violation of one subsection of section 1692e.  The holding of *Palmer* does not,

15  therefore, support dismissal of any part of Plaintiff's claim.

16      The cases from other districts and circuits are unavailing.  In *Bleich v. The Revenue

17  Maximization Group*, 233 F. Supp. 2d 496, 501 (E.D.N.Y. 2002), the Court held that plaintiff's

18  lawsuit under section 1692g (for collecting an invalid debt) could not proceed because of failure

19  to first contact the collector to dispute the debt.  There was no allegation that the collection letter

20  was otherwise misleading.  In *Lindbergh v. Transworld Sys.*, 846 F. Supp. 175 (D. Conn. 1994),

21  the Court expressed concern about the plaintiff's failure to dispute the debt directly and asked

22  why a lawsuit was necessary.  But the Court's holding under section 1692g was not that the fail-

23  ure to dispute the debt barred the claim, but rather that plaintiff had failed to present a material

24  issue of fact that the defendant had intentionally or recklessly attempted to collect the debt.  *Id.* at

25  179.[4]  It then went on to consider the claim under 1692e without reference to plaintiff's failure to

---

26  [4] This holding may also have been inconsistent with Ninth Circuit precedent that the FDCPA "is a
27  strict liability statute that 'makes debt collectors liable for violations that are not knowing or in-
    tentional.'"  *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1030 (9th Cir. 2010), *quoting*
28  *Reichert v. Nat'l Credit Sys.*, 531 F.3d 1002, 1005 (9th Cir. 2008). (internal quotation marks
    omitted.)

dispute the debt; its holding there was that there was no material issue of fact establishing that any aspect of the collection letter was misleading. *Id*. at 180. Thus, it granted summary judgment to defendant. *Jenkins v. Heintz*, 124 F. 3d 824 (7th Cir. 1997), similarly, was a review of summary judgment on the bona fide error defense set forth in 15 U.S.C. § 1692k(c); and *Moya v. Hocking*, 10 F.Supp.2d 847 (W.D. Mi. 1998), was another summary judgment case on the bona fide error defense. *Howe v. Readers Digest*, 686 F. Supp. 461, 467 (S.D.N.Y. 1988) is also inapposite, as the Court found that the defendant was not a "debt collector" under the FDCPA. West Bay makes no such contention in this case.

Defendant cites several cases for the proposition that plaintiff "must show that [defendant] knowingly or intentionally misrepresented the amount of the debt in its collection letters." *McStay v. I.C. Systems, Inc*. 174 F.Supp 2d 42 (S.D.N.Y. 2001); *see also Hubbard v. National Bond & Collections Associates*, 126 BR. 422 (D. Del. 1991) (requiring that the that a "false representa-tion" under § 1692e be "intentional"); *Brown v. Solomon and Solomon*, 694 N.Y.S 2d 843 (1999) (imposing knowledge requirement on FDCPA violations). But there is no such knowledge or in-tent requirement in the Ninth Circuit. *See, e.g., Clark v. Capital Credit & Collection Servs*., 460 F.3d 1166, 1176 (9th Cir. 2006). And even if this requirement existed in this Circuit, Plaintiff would easily satisfy the requirement as he repeatedly pleads both knowledge and intent. (Dkt.# 1, ¶¶ 28, 36, 63.)

Finally, both *Ducrest v. Alco Collections, Inc*., 931 F.Supp. 459 (M.D. La. 1996) and *Hooper v. Capital Credit & Collection Servs*., 2003 U.S. Dist. LEXIS 25943 (D. Or. Nov. 24, 2003) support liability in this litigation. *Ducrest*, for example, states that the basis of a claim un-der the "FDCPA should be that the defendant has acted unscrupulously in attempting to collect a debt." *Ducrest*, 931 F.Supp at 462. That type of unscrupulous behavior is exactly what Plaintiff alleges—i.e., that West Bay attempted to collect debts it knew to be bogus, utilizing collection practices that it knew to violate the Order. In *Hooper*, the Court denied the motion to dismiss de-spite plaintiff's failure to dispute the debt before suit, and it rejected the defendants' contention that it was entitled to rely on the creditor. The Court explained:

Plaintiff has alleged that defendants violated the FDCPA in a variety of ways that are not

1    necessarily limited to continued attempts to collect a debt after the debt was disputed.
2    Plaintiff alleges that defendants "used false, deceptive and misleading representations,"
     "used unfair and unconscionable means," and failed "to disclose the amount of the debt
3    and the creditor to whom the debt was owed." He has alleged that defendants violated
     state law by "attempting to collect the debt with knowledge or reason to know that the
4    right or remedy did not exist and by attempting to collect unauthorized charges, interest
     and fees." These allegations are sufficient to survive a motion to dismiss for failure to
5    state a claim.

6    *Id.*, at *6-7.

7            b.      **West Bay Deceptively Claimed The Debt Was Owed to It.**

8            West Bay next attacks Plaintiff's claims arising out of its statements regarding ownership

9    of the debt, contending that the statements were not inconsistent, and that any misrepresentation

10   was immaterial.  Plaintiff specifically pled that Defendants simultaneously stated on the one hand

11   that they were "authorized ***agents for*** the legal successor to Hollywood Video" and on the other

12   hand that "This debt is ***owed to*** West Bay Acquisitions, LLC."  (Dkt.# 1, ¶¶ 42, 63.)  (emphasis

13   added.)  The statements are inconsistent, because West Bay either owns the debt itself (in which

14   case the debt is "owed to" it; or West Bay is an agent for another party that is the "legal succes-

15   sor" to Hollywood Video.  West Bay now apparently contends that, despite its contrary state-

16   ments, the least sophisticated consumer would assume that the West Bay did not own the debt and

17   that it was collecting on behalf of the Trustee.  West Bay does not cite any authority for this con-

18   tention because it is mistaken.  On the contrary, one Court has ruled that "a collection notice is

19   deceptive when it can be reasonably read to have two or more different meanings, one of which is

20   inaccurate."  *Russell v. Equifax, A.R.S.* 74 F.3d 30, 35 (2d Cir. 1996).  The inconsistent represen-

21   tations also are material, because they affect the methods Plaintiff has for redress.  For example,

22   Plaintiff can exercise FDCPA rights only against a "debt collector," not a creditor.

23           *Dorner v. Commercial Trade Bureau*, 2008 U.S. Dist. LEXIS 70425 at *16 (E.D. Cal.

24   Apr. 10, 2008) is also instructive.  In *Dorner,* plaintiff alleged that defendant's name—

25   "Commercial Trade Bureau of California"—created a false representation or implication that the

26   debt collector was "vouched for or affiliated with the United States or any State."  *Id.*  Defendant

27   moved to dismiss, arguing that this statement would not mislead "the least sophisticate consumer"

28   into believing that it was affiliated with the State of California.  *Id.*  The Court disagreed and

found that Plaintiff adequately stated a claim for relief. *Id.*, at *17; *see also Burchalewski v. Wolpoff & Abramson, LLP*, 2008 U.S. Dist. LEXIS 73625, at *2 (W.D.N.Y. Sept. 8, 2008) (denying motion to dismiss where debt collector stated it was collecting on behalf of the May Department Stores Company ("May"), despite the fact that Federated had acquired the debt from May, and that May no longer existed as a legal entity.)

In *Chan v. N. Am. Collectors, Inc.*, 2006 U.S. Dist. LEXIS 13353 (N.D. Cal. Mar. 24, 2006), plaintiff also alleged violations of the FDCPA because defendant misrepresented the true creditor to whom the alleged debt was owed at the time the collection letter was sent. *Id.*, at *12-13. Defendant argued that the letter adequately stated that the debt was owed to Citibank. The Court disagreed. It found plaintiff's allegations that the "true creditor to whom the alleged debt was owed at the time the collection letter was sent" was Unifund CCR Partners. Thereby, it held that plaintiff adequately stated a claim for relief.

Courts also have agreed that the identity of the actual creditor—here, whether the debt is "owed to" the legal successor to Hollywood Video or to West Bay—is material to the least sophisticated debtor. *Tourgeman v. Collins Fin. Servs.*, 2011 U.S. Dist. LEXIS 81070 (S.D. Cal. July 26, 2011), for example, recently stated:

> To preserve the protections and policies of the FDCPA, it is important to know the proper identity of the creditor. Knowing a creditor's identity allows the "least sophisticated consumer" to make more informed decisions on how to communicate with the creditor and avoid being misled.

*Id.*, at *17-18, *citing Isham v. Gurstel, Staloch & Chargo, P.A.*, 738 F. Supp. 2d 986, 996 (D. Ariz. 2010). Finally, even if West Bay is ultimately correct, it is well established that whether or not these statements were false, deceptive and/or misleading is not properly determined on a motion to dismiss. *See, e.g., Dorner v. Commercial Trade Bureau*, 2008 U.S. Dist. LEXIS 70425 at *16 (E.D. Cal. Apr. 10, 2008) (stating that "While application of the "least sophisticated consumer" standard is a matter of law, most cases making the legal decision have done so in the context of a summary judgment motion."); *see also Forsberg v. Fid. Nat'l Credit Servs.*, 2004 U.S. Dist. LEXIS 7622 (S.D. Cal. Feb. 25, 2004) (holding that "Whether the notice given was 'false, deceptive, or misleading' is a factual question, which may not be determined in a motion to dis-

1   miss.") (citations omitted.)  The "materiality" of the alleged falsity or misrepresentation is also "a

2   fact-specific issue that should ordinarily be left to the trier of fact." *Tourgeman,* 2011 U.S. Dist.

3   LEXIS 81070 at *17-18, *citing In re Apple Computer Secs. Litig.*, 886 F.2d 1109, 1113 (9th Cir.

4   1989).  .

5          West Bay further contends that it did not violate § 1692e(14) for the same reasons.  It spe-

6   cifically argues that it collected the debt under its true name—i.e., West Bay Acquisitions, LLC.

7   As it is remains unknown as to whether West Bay owned the debt or was collecting the debt, or

8   whether the real owners are co-defendants Christopher Runci LLC, Runci, and Harraka, Plaintiff

9   adequately alleges that its statements were "false, deceptive, or misleading."  (Dkt.# 1, ¶ 67.)

10  The veracity of those allegations, like all of West Bay's arguments, should not be determined on

11  motion to dismiss.  *See, e.g., Forsberg v. Fid. Nat'l Credit Servs.*, 2004 U.S. Dist. LEXIS 7622

12  (S.D. Cal. Feb. 25, 2004).

13              **c.     Defendant Deceptively Implied Negative Credit Reporting.**

14         West Bay finally argues that it did not violate the FDCPA by making reference to "con-

15  tinued collection efforts," because "the least sophisticated consumer" would not have understood

16  that statement, and the collection letter itself, to imply the possibility of further action such as

17  negative credit reporting.  Indeed, West Bay asks this Court to leap to the conclusion that recipi-

18  ents of the letter would fear no consequences from non-payment.  West Bay's request is prepos-

19  terous.  It is common knowledge that without the implication of negative credit reporting or suit,

20  few consumers would ever respond to collection letters, especially where, like here, the underly-

21  ing debts are bogus.  (Dkt.# ¶¶ 35, 37, 64-65.)

22         As West Bay admits, the Court must apply a "least sophisticated debtor" standard.  *Swan-*

23  *son v. S. Or. Credit Serv., Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988).  Although the standard is

24  objective, it is "lower than simply examining whether particular language would deceive or mis-

25  lead a reasonable debtor." *Id.* at 1227.   Plaintiff has alleged sufficiently that the "least sophisti-

26  cated debtor" would have feared credit reporting.

27         *Canlas v. Eskanos & Adler, P.C.*, 2005 U.S. Dist. LEXIS 43380 (N.D. Cal. July 6, 2005)

28  is on point.  There, plaintiff argued that a threat of further action was implied by defendant's

1  statement that "DESPITE OUR REQUEST THAT YOU VOLUNTARILY PAY THE BAL-

2  ANCE OF THIS CLAIM *SO THAT FURTHER ACTION BY OUR OFFICE CAN BE AVOIDED*,

3  YOU HAVE FAILED TO DO SO."  The Court held that "Faced with such a letter, the least so-

4  phisticated debtor reasonably could assume that, having failed voluntarily to pay the debt, the

5  debtor would be faced with 'further action' (i.e., action no longer could 'be avoided')."  *Id.*, at *8.

6  Other cases from this District have similarly found an implied threat of legal action, including

7  negative credit reporting, in vague threats of "other remedies" or "further steps."  *See, e.g.,*

8  *Palmer v. Stassinos*, 348 F. Supp. 2d 1070, 1085 (N.D. Cal. 2004) (denying motion to dismiss

9  where collection letter stated that failure to remit payment "may necessitate . . . using other reme-

10  dies to collect [the] dishonored check"); *Perretta v. Capital Acquisitions & Mgmt. Co.*, 2003 U.S.

11  Dist. LEXIS 10070, at *4 (N.D. Cal. May 5, 2003) (denying motion to dismiss where creditor's

12  agent was alleged to have stated over the telephone that, if the debtor did not "work with" the

13  creditor, "further steps would be taken").

14      West Bay cites a single case to support its argument, *Dunlap v. Credit Protection Ass'n,*

15  *L.P.*, 419 F.3d 1011 (9th Cir. 2005).  In *Dunlap v. Credit Protection Ass'n*, 419 F.3d 1011, 1012

16  (9th Cir. 2005), the plaintiff argued that the debt collector's name— "Credit Protection Associa-

17  tion" —coupled with its demand for payment, implied that it would "damage the debtor's credit

18  by reporting the debt to credit reporting agencies" if payment was not made.  The Ninth Circuit

19  disagreed with plaintiff.  It stated that the language in the letter was "straightforward and non-

20  threatening," and noted that the failure to inform the debtor that "de minimis debts are rarely re-

21  ported . . . is not so misleading that it violates the FDCPA."  *Id.*   To the contrary, in this instance,

22  the letter stated that payment was necessary to avoid "continued collection efforts."  Moreover,

23  here, unlike in *Dunlap*, the Order imposed an affirmative obligation on West Bay not even to ***im-***

24  ***ply*** that non-payment would result in credit reporting, and it is the alleged violation of that Order

25  that forms the basis of the FDCPA claim.   (Safier Decl., Ex. A.)

26          **2.       Plaintiff's Rosenthal Act Claim is Properly Plead.**

27      West Bay next argues that Plaintiff's claims under the California Rosenthal Fair Debt Col-

28  lection Act ("Rosenthal Act"), Civil Code § 1788, et seq. should also be dismissed because those

claims are entirely predicated on West Bay's alleged violation(s) of the FDCPA.  This argument

is mistaken, because Plaintiff's Rosenthal claims are based not only on Civil Code §1788.17—the

section that incorporates by reference the FDCPA—but many other sections of the Rosenthal Act.

Plaintiff pleads that West Bay "engaged unfair or deceptive and/or unconscionable trade practices

made unlawful pursuant to the California Rosenthal Fair Debt Collection Act, Civil Code § 1788,

et seq."  (Dkt.# 1, ¶ 63.)  Plaintiff is not obligated to state, with specificity, which sections of the

RFDCPA acts were violated by Defendants.  *See Robinson v. Managed Accounts Receivable*

*Corp.*, 654 F. Supp. 2d 1051 (C.D. Cal. 2009) (holding that the FDCPA and RFDCPA are "not

such a lengthy or complex statute[s] as to render Defendants unable "to prepare an adequate de-

fense" without knowing which specific sections of the statute Plaintiff may claim they violated.)

West Bay does not challenge the adequacy of Plaintiff's allegations regarding violation of the

other aspects of the Rosenthal Act.  It is apparent from the allegations in the complaint that claims

arise under, *inter alia,* Civil Code section 1788.13 subsections (a) ("Any communication with the

debtor other than in the name either of the debt collector or the person on whose behalf the debt

collector is acting"), (f) ("The false representation that information concerning a debtor's failure

or alleged failure to pay a consumer debt has been or is about to be referred to a consumer report-

ing agency"), and (i) ("The false representation of the true nature of the business or services being

rendered by the debt collector").  And even if his Rosenthal claims were entirely based on his

FDCPA claims (under section 1788.17), the Rosenthal claims could not be dismissed because as

set forth in the prior section, Plaintiff's FDCPA claims are properly pled.  *See, e.g., Hosseinzadeh*

*v. M.R.S. Assocs.*, 387 F. Supp. 2d 1104, 1118 (C.D. Cal. 2005) (permitting Rosenthal claims to

go forward that were predicated on FDCPA violations).

### 3.   Plaintiff Has Standing to Assert A Violation of the UCL

The UCL defines "unfair competition" to include "unlawful, unfair or fraudulent business

act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by

Chapter 1 (commencing with Section 17500) of ... the Business and Professions Code."  Cal. Bus.

Prof. Code § 17200.  Any of the three types of misconduct—unlawful conduct, unfair conduct, or

fraudulent conduct—constitutes a violation.  *Id.*  Plaintiff pleads all three types of misconduct.

1   West Bay does not quarrel with the substance of Plaintiff's UCL allegations.  It argues, however,

2   that Plaintiff does not have standing to assert any UCL claim because he cannot plead "loss of

3   money or property."  West Bay is again mistaken.

4       "The plain import of [the loss of money or property requirement] is that a plaintiff now

5   must demonstrate some form of economic injury." *Kwikset Corp. v. Superior Court*, 51 Cal. 4th

6   310, 323 (2011).  However, there "are innumerable ways in which economic injury from unfair

7   competition may be shown.  A plaintiff may (1) surrender in a transaction more, or acquire in a

8   transaction less, than he or she otherwise would have; (2) have a present or future property inter-

9   est diminished; (3) be deprived of money or property to which he or she has a cognizable claim;

10  or (4) be required to enter into a transaction, costing money or property, that would otherwise

11  have been unnecessary." *Id.*  Plaintiff need only allege "an identifiable trifle of economic injury"

12  to satisfy the UCL standing requirements. *Id.*, 51 Cal. 4th at 330 n.15 (internal citations omitted).

13  The purpose of these standing requirements was "to eliminate standing for those who have not

14  engaged in any business dealings with would-be defendants and thereby strip such unaffected par-

15  ties of the ability to file shakedown lawsuits, while preserving for actual victims of deception and

16  other acts of unfair competition the ability to sue and enjoin such practices." *Id.*, 51 Cal. 4th at

17  317.  It is clear from the Complaint that Plaintiff engaged in business with Hollywood Video and,

18  by extension, its debt collector and he should be permitted to enjoin its improper practices.

19      Plaintiff pleads that he, and those similarly situated, have "suffered and continue to suffer

20  injury in fact and have lost money and/or property as a result of [Defendants'] deceptive, unfair

21  and/or unlawful trade practices and unfair competition." (Dkt.# ¶ 74.)  He further incorporates

22  into this cause of action all other paragraphs of the complaint. (Id., ¶ 68.)  West Bay counters,

23  however, that this "formulaic recitation" is insufficient.

24      While West Bay is correct that Plaintiff figured out its scam before paying it money that

25  he did not owe, he still has standing under the UCL.  To begin with, Plaintiff spent a significant

26  amount of time and money reviewing and researching the debt letter, contending with harassing

27  phone calls, trying to contact West Bay, retaining attorneys and filing a complaint.  A loss of time

28  has been held to satisfy the UCL's standing requirement of an economic injury. *See, e.g., So.*

*Cal. Housing Rights Ctr. v. Los Feliz Towers Homeowners Ass'n*, 426 F. Supp. 2d 1061, 1069 (C.D. Cal. 2005) (holding plaintiff Housing Rights Center had standing under the UCL where the plaintiff alleged loss of financial resources through its investigation of a discrimination claim and diversion of staff time from other cases to investigate the discriminatory allegations).  So too does paying a filing fee.  *See Janti v. Encore Capital Group, Inc.*, 2010 U.S. Dist. LEXIS 78199 at * 20 (S.D. Cal. Aug. 3, 2010); *see also Tourgeman v. Collins Fin. Servs., Inc.*, 2009 U.S. Dist. LEXIS 127542, at *7 (S.D. Cal. 2009), *citing Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305 (2009) (holding that "'[O]ut-of-pocket expenses or *money spent* [is] a financial harm that constitute[s an] 'injury in fact' for purposes of standing under the UCL and in federal court.").  Plaintiff also has an economic injury under the FDCPA and Rosenthal Acts themselves, both of which entitle him to liquidated or statutory damages for the alleged violations.  *See, e.g.,* 15 U.S.C. § 1692K(a)(2)(A) (damages of up to $1000 for each violation); Cal. Civ. Code. § 1788.30 (damages of up to $1000 for each violation).

### C.    If Any Allegations Are Insufficient, Leave To Amend Should Be Granted.

 If a complaint is dismissed for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged plead-ing could not possibly cure the deficiency."  *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).  Indeed, leave to amend is only really properly denied "where the amendment would be futile."  *DeSoto v. Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992). Should this Court find any of Plaintiff's allegations insufficient to state a claim for relief, he respectfully requests leave to amend.

///

1    **IV.    CONCLUSION**

2           For the foregoing reasons, this Court should deny Defendant's motion to dismiss.

3

4           Dated:  March 16, 2012                    **GUTRIDE SAFIER LLP**

5                                                     /s/ Seth A. Safier
                                                      Adam J. Gutride, Esq.
6                                                     Seth A. Safier, Esq.
                                                      835 Douglass Street
7                                                     San Francisco, California 94114

8                                                      Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1       **DECLARATION OF SERVICE**

2           I, the undersigned, declare:

3           1.      That declarant is and was, at all times herein mentioned, a citizen of the United

4   States and a resident of San Francisco, California, over the age of 18 years, and not a party to or

5   interest in the within action; that declarant's business address is 835 Douglass Street, San Fran-

6   cisco, California 94114.

7           2.      That on March 15, 2012, declarant served the PLAINTIFF'S OPPOSITION TO

8   DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6) and DECLARA-

9   TION OF SETH A. SAFIER IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFEN-

10  DANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(6), by electronic mail VIA

11  ECF.

12          I declare under penalty of perjury that the foregoing is true and correct.  Executed this

13  14th day of March, 2012, at San Francisco, California.

14

15                                              /s/ Seth A. Safier
                                    _____
16                                              SETH A. SAFIER

17                                       **SERVICE LIST**

18  Andrew Steinheimer, Esq.
19  Lindsey Heaton, Esq.
    Ellis Law Group, LLP
20  555 University Avenue, Suite 200
    Sacramento, CA 95825
21

22

23

24

25

26

27

28