IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT KOLLER,<br><br>        Plaintiff,<br><br>   v.<br><br>WEST BAY ACQUISITIONS, LLC ET AL.,<br><br>        Defendants. | No. C 12-00117 CRB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS** |

      Defendants Todd Harraka ("Harraka") and Christopher Runci ("Runci"), move to dismiss Plaintiff Scott Koller's ("Plaintiff's") First Amended Complaint ("FAC") in its entirety on the ground that the Court lacks personal jurisdiction.  Harraka, Runci, and Defendants West Bay Acquisitions LLC ("West Bay"), and Christopher Runci LLC ("Runci LLC") also move to dismiss Plaintiff's FAC on the grounds that: (1) Plaintiff's claim that Defendants violated the Rosenthal Act should be dismissed because the collection of underlying debt does not implicate the Rosenthal Act; (2) Plaintiff has not properly alleged an economic injury for purposes of California's Unfair Competition Law ("UCL"); and (3) to the extent Plaintiff's claims under section 1692e(2) and 1692e(10) of the Fair Debt Collection Practices Act ("FDCPA") are based on allegedly conflicting statements regarding ownership of the debt, it should be dismissed.

The Court finds that Plaintiff has not established the Court's personal jurisdiction over Runci and Harraka, and so GRANTS the Motion to Dismiss the FAC as to them without prejudice. Plaintiff has 60 days to file a Second Amended Complaint following jurisdictional discovery if he so chooses. The Court finds that Plaintiff has sufficiently alleged that his claim implicates the Rosenthal Act, that he has standing under the UCL, and that the FDCPA claims are not based on allegedly conflicting statements regarding the ownership of debt. Accordingly, this Court DENIES the remainder of Runci's and Harraka's Motion to Dismiss, and DENIES West Bay and Runci LLC's Motion to Dismiss.

## I. BACKGROUND

This case concerns a debt allegedly owed to Hollywood Video, a video rental company, which declared bankruptcy in 2010. FAC (dkt. 22) ¶ 2. As part of the bankruptcy proceedings, a trustee was appointed to collect certain assets, including late fees and product charges incurred by former customers. Id. ¶¶ 21-23. The debt collection agencies with whom the trustee originally contracted to collect these customer debts engaged in objectionable debt collection practices, leading to a Stipulation and Agreed Order ("the Order") in the Eastern District of Virginia with the Attorneys General of all fifty states. Id. ¶¶ 25-26. The Order governs all debt collection actions taken with regard to these Hollywood Video customer accounts, and prohibits, *inter alia*, the collection of stand-alone product charges and the threat or implication that these customer debts will be reported to credit reporting agencies. Id. ¶ 27. Defendants are bound by the Order when attempting to collect on any of these customer accounts, including Plaintiff's account. Id. ¶ 32.

On December 6, 2011, Plaintiff received a debt collection notice from Defendant West Bay concerning a debt of $49.98 allegedly owed to Hollywood Video. Id. ¶¶ 41-42. The letter stated that West Bay is "the authorized agent for the legal successor of Hollywood Video" and that the debt is "owed to" West Bay. Id. ¶ 42. Plaintiff does not believe that he owes this debt to Hollywood Video because in 2009 he confirmed with the store manager at his local Hollywood Video store that he had no outstanding videos to return or unpaid fees, and he did not engage in subsequent transactions with Hollywood Video. Id. ¶ 40.

1   While in operation, Hollywood Video refused to rent to customers who had unpaid
2 late fees or unreturned items on their account. Id. ¶ 20. Additionally, Hollywood Video
3 required customers to provide a credit card or bank account to which it could charge unpaid
4 fees in the event that a product was not returned. Id. Plaintiff paid a monthly fee and
5 received unlimited monthly video rentals, with no late fees. Id. ¶ 38. The amounts Plaintiff
6 allegedly owes are for either late fees, product fees, or both. Id. ¶ 43.[1]

7   Plaintiff alleges that the true business name of West Bay is Runci, LLC (doing
8 business as Runci Group) and that Runci and Harraka are principals of both West Bay and
9 Runci Group. Id. ¶¶ 5, 6, 34. Plaintiff brings this suit as a putative class action. Id. ¶ 51.

10   The original Complaint named West Bay, Runci LLC, Harraka, and Runci as
11 Defendants. See Compl. (dkt. 1). Runci, Harraka, and Runci LLC filed answers, in which
12 Harraka and Runci cited lack of personal jurisdiction as an affirmative defense. See Answer
13 to Compl. by Harraka (dkt. 10) at 90; Answer to Compl. by Runci (dkt. 11) at 90; Answer to
14 Compl. by Runci LLC (dkt. 12). West Bay filed a motion to dismiss the original complaint.
15 See West Bay's Motion to Dismiss (dkt. 13).

16   The Court denied West Bay's Motion to Dismiss in regards to Plaintiff's 15 U.S.C. §§
17 1692e(2), (5), (1), and 1692f(1) claims and Rosenthal Act claim, and granted the Motion to
18 Dismiss in regards to Plaintiff's 15 U.S.C. § 1692e(8), (14), and UCL claims, giving Plaintiff
19 leave to amend. See Order Granting in Part and Denying in Part Motion to Dismiss
20 ("Order") (dkt. 21).

21   Plaintiff filed the FAC, which contained very similar factual allegations. See
22 generally FAC. Defendants Runci and Harraka have now filed a Motion to Dismiss. See
23 generally Harraka's and Runci's Motion to Dismiss ("MTD") (dkt. 30). Defendants West
24 Bay and Runci LLC have also filed a Motion to Dismiss on essentially the same grounds.
25 See generally West Bay's and Runci LLC's Motion to Dismiss ("WB MTD") (dkt. 31).

---

[1] Defendants' debt collection letter claims that Plaintiff owes money for late fees and/or penalties. Id. ¶ 43. Although Plaintiff denies that he owes any money to Hollywood Video, for purposes of analyzing Defendants' debt collection practices, the Court takes the "debt" Defendants intended to collect to be the alleged late fees and/or penalties.

3

## II. LEGAL STANDARD

### A. Rule 12(b)(2)

Federal Rule of Civil Procedure 12(b)(2) governs dismissal for lack of personal jurisdiction. It is the plaintiff's burden to establish the court's personal jurisdiction over a defendant. Cubbage v. Merchent, 744 F.2d 665, 667 (9th Cir.1984). The court may consider evidence presented in affidavits to assist it in its determination and may order discovery on the jurisdictional issues. Data Disc, Inc. v. Systems Tech. Assoc., Inc., 557 F.2d 1280, 1285 (9th Cir. 1977). "When a district court acts on a defendant's motion to dismiss without holding an evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." Ballard v. Savage, 65 F.3d 1495, 1498 (9th Cir.1995) (citations omitted); see also AT&T v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir.1996). In this context, a prima facie showing is established if plaintiff has produced admissible evidence which, if believed, would be sufficient to establish the existence of personal jurisdiction. See Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clemens Ltd., 328 F.3d. 1122, 1129 (9th Cir. 2003).

### B. Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims alleged in a complaint. Ileto v. Glock, Inc., 349 F.3d 1191, 1199-1200 (9th Cir. 2003). "Detailed factual allegations" are not required, but the Rule does call for sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. In determining facial plausibility, whether a complaint states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. Allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996).

4

## III. DISCUSSION

Defendants Harraka and Runci move to dismiss Plaintiff's FAC in its entirety on the ground that the Court lacks personal jurisdiction. MTD at 1. In addition, Defendants Harraka, Runci, West Bay, and Runci LLC move to dismiss Plaintiff's FAC on the grounds that: (1) Plaintiff's claim that Defendants violated the Rosenthal Act should be dismissed because the collection of underlying debt does not implicate the Rosenthal Act; (2) Plaintiff has not properly alleged an economic injury for purposes of the UCL; and (3) to the extent Plaintiff's claims under section 1692e(2) and 1692e(10) of the FDCPA are based on allegedly conflicting statements regarding ownership of the debt, it should be dismissed. Id. at 1-2; WB MTD at 1-2. This Order addresses each argument in turn.

### A. Personal Jurisdiction over Harraka and Runci

#### 1. Waiver

Harraka and Runci move to dismiss the FAC by arguing that the Court lacks personal jurisdiction over them. MTD at 6. Plaintiff contends that Defendants waived their Rule 12(b) personal jurisdiction defense by answering the Complaint before moving to dismiss the FAC. Plaintiff's Opp'n to Runci and Harraka's MTD ("Opp'n") (dkt. 34) at 6. The Court finds that Defendants did not waive this defense.

Defendants' contention that they may file a new round of initial pleadings because the amended complaint supersedes the prior complaint is without merit. Reply to Plaintiff's Opp'n to Runci and Harraka's MTD ("Reply") at 3 (citing Loux v. Rhay, 375 F.2d 55, 56 (9th Cir. 1967)). Although the operative complaint before the Court is the FAC, "the filing of an amended complaint does not automatically revive all defenses or objections that the defendant may have waived in response to the initial complaint." See 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1388 (3d ed. 2004) (stating that "The filing of an amended complaint will not revive the right to present by motion defenses that were available but were not asserted in timely fashion prior to the amendment of the pleading"). Plaintiff's FAC includes very similar factual allegations as the first Complaint, and thus the parties may not file a new round of initial pleadings. Therefore, given that

5

1 Defendants' Motion is untimely, the issue is whether asserting the affirmative defense in
2 their Answer made their Motion to Dismiss proper.

3 Here, Defendants answered the original Complaint claiming the affirmative defense of
4 personal jurisdiction, and now move to dismiss the FAC on that same ground. The Court
5 finds the Motion to Dismiss is proper. See Lucas v. City of Visalia, 726 F.Supp.2d 1149,
6 1155 (E.D. Cal. 2010) (holding that Defendants may move to dismiss an amended complaint
7 when they answered the original complaint pleading the affirmative defense). Wright and
8 Miller explain that, although a strict interpretation of the timing provision of Federal Rule
9 12(b) "leads to the conclusion that the court must deny any motion made after a responsive
10 pleading as being too late . . . federal courts have allowed untimely motions if the defense
11 has been previously included in the answer." 5C Charles Alan Wright & Arthur R. Miller,
12 Federal Practice and Procedure § 1361 (3d ed. 2004).

13 This logic has also been applied to untimely Rule 12(b) motions raising lack of
14 personal jurisdiction.[2] In In re Arthur Treacher's Franchisee Litigation, 92 F.R.D. 398, 413
15 (E.D. PA. 1981), for example, the court held that the defendant's filing of an answer which
16 raised the defense of lack of personal jurisdiction prior to the filing of a rule 12(b)(2) motion
17 did not remove the motion from consideration by the court on the grounds that it is untimely.
18 The court declined to require a Rule 12(b) motion to "precede the filing of a responsive
19 pleading . . . if the very defense of lack of personal jurisdiction is contained in the responsive
20 pleading as . . . an affirmative defense." Id.; see also Majerus v. Walk, 275 F.Supp. 952,
21 954-55 (D. Minn. 1967) (stating that a defendant's motion to dismiss was proper after setting
22 up lack of personal jurisdiction in his prior answer so as to prevent its waiver at a later date).

23 Finally, the Ninth Circuit has looked not unfavorably on situations where a defendant
24 answers with an affirmative defense and later brings a motion to dismiss on the same
25 grounds. See Aldabe v. Aldabe, 616 F.2d 1089, 1093 (9th Cir. 1980) (holding that appellees

26

---

27 [2] A leading authority on practicing in federal courts has also stated that "a defendant may attack
the court's jurisdiction over him or her by raising the defense by answer and moving to dismiss later."
28 Schwarzer et al., Federal Civil Procedure Before Trial, Calif. & 9th Cir. Editions, 3:410 (The Rutter
Group 2012).

6

who filed answers asserting the affirmative defense and subsequently filed motions to dismiss on the same grounds were not precluded).

Here, Harraka and Runci answered the Complaint with a Rule 12(b)(2) affirmative defense, and after a different Defendant's Motion to Dismiss was granted in part and denied in part, resulting in the FAC, filed a Motion to Dismiss based on Rule 12(b)(2). Because courts tend to be flexible with Rule 12(b) timeliness in such circumstances, the Court finds that Harraka and Runci have not waived their right to challenge personal jurisdiction.

### 2. Minimum Contacts

"For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 801 (9th Cir. 2004) (citing Int'l Shoe v. Washington, 326 U.S. 310, 316 (1945)). "Minimum contacts" can be satisfied with either "general jurisdiction" or "specific jurisdiction." Doe v. Unocal Corp., 248 F.3d 915, 923 (9th Cir. 2001). Plaintiff contends only that the Court has specific jurisdiction over the individual defendants. Opp'n at 8.

Specific jurisdiction requires that: "(1) the nonresident defendant purposefully direct his activities or consummate a transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum. . .; (2) the claim be one that arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction be reasonable." See Schwarzenegger, 374 F.3d at 802 (quoting Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)). The plaintiff bears the burden of satisfying the first two prongs of the test, and, if he succeeds at that, the burden shifts to the defendant to show compellingly that the exercise of jurisdiction would not be reasonable. Schwarzenegger, 374 F.3d at 802. As described below, Plaintiff has not demonstrated that the Court has specific jurisdiction over Harraka or Runci.

To establish "purposeful availment," a plaintiff must demonstrate that a defendant "engage[d] in some form of affirmative conduct allowing or promoting the transaction of

7

business within the forum state." Gray & Co. v. Firstenberg Mach. Co., 913 F.2d 758, 760 (9th Cir. 1990). A defendant purposefully directs activity at a forum state when he "(1) commit[s] an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Schwarzenegger, 374 F.3d at 805.

### a. Defendant Harraka

Plaintiff has not stated sufficient allegations to support the Court's exercise of specific jurisdiction over Harraka. Plaintiff's allegations as to Harraka's involvement and participation in drafting and sending the debt collection letters are entirely conclusory. Plaintiff states that the letters "were sent at the direction of [Runci and Harraka]," however Plaintiff provides no support for that statement. FAC ¶ 34. In fact, Harraka specifically denies any participation in the drafting or sending of the letter to Plaintiff. Harraka Decl. (dkt. 30-2) ¶¶ 6, 8. Harraka states that he did not personally draft the form letter, did not personally send the letter to Plaintiff, did not direct anyone to send the letter, and did not sign the letter. Id. Harraka also states that he never called or attempted to call Plaintiff. Id. ¶ 9. Similarly, Plaintiff alleges that the Court has personal jurisdiction over Harraka because he participated in collecting the debt at issue and that such participation is sufficient to establish FDCPA liability. Opp'n at 10. However Harraka specifically denies participation in sending the letter, Harraka Decl. ¶¶ 6, 8, thus his role cannot presently be determined and the current allegations are insufficient to establish personal jurisdiction. Plaintiff has not carried his burden of satisfying the first prong of the test, and he has therefore not made a showing of the Court's specific jurisdiction over Harraka. See Schwarzenegger, 374 F.3d at 802.

### b. Defendant Runci

Similarly, the FAC provides no allegations that would support the Court's exercise of specific jurisdiction over Runci. Despite Plaintiff's conclusory allegations that Runci participated in sending the letter, see FAC ¶ 34, Runci specifically denies such involvement, see Runci Decl. (dkt. 30-1) ¶¶ 2, 8, 10. Runci asserts that he did not personally draft the form letter used on Hollywood Video accounts, did not personally send the collection letter

8

to Plaintiff, did not sign the letter, and did not direct anyone to send the letter to Plaintiff. Id. ¶¶ 8, 10. Further, Runci has never lived in California, does not work in California, and does not have any bank accounts in California. Id. ¶ 2. Plaintiff has not carried his burden of satisfying the first prong of the test, and he has therefore not made a showing of the Court's specific jurisdiction over Runci. See Schwarzenegger, 374 F.3d at 802.

The Court therefore GRANTS the Motion to Dismiss as to Harraka and Runci without prejudice. As discussed at the motion hearing, Plaintiff may conduct jurisdictional discovery and file a Second Amended Complaint within 60 days if he wishes to do so.

### B. Rosenthal Fair Debt Collection Practices Act

The Rosenthal Act requires debt collectors attempting to collect debts in California to comply with the FDCPA, specifically 15 U.S.C. §§ 1692b through 1692j. Cal. Civ. Code § 1788.17. The Rosenthal Act also prohibits "[t]he use, or threat of use, of physical force or violence or any criminal means to cause harm to the person, or the reputation, or the property of any person" in debt collection. Id. § 1788.10(a). Plaintiff alleges that Defendants violated the Rosenthal Act by violating the FDCPA. FAC ¶ 15. The Rosenthal Act only pertains to the collection of consumer debts that are the result of a "consumer credit transaction." Cal. Civ. Code §§ 1788.2 (e), (f).

The terms "consumer debt" and "consumer credit" mean "money, property or their equivalent, due or owing or alleged to be due or owing from a natural person by reason of a consumer transaction." Cal. Civ. Code §1788.2 (f). The term "consumer credit transaction" means "a transaction between a natural person and another person in which property, services or money is acquired on credit by that natural person from such other person for personal, family, or household purposes." Cal. Civ. Code § 1788.2(e).

Defendants allege that the current claim does not implicate the Rosenthal Act because the videos were paid for at the time of rental, there was no "credit transaction," and the mere fact that the movies were acquired or used for longer than previously agreed does not result in an ex post facto credit transaction. MTD at 10; WB MTD at 6.

Plaintiff maintains that because he allegedly acquired extended video rentals and/or

9

the videos themselves without paying for them with late fees or product charges, the Rosenthal Act is applicable. Opp'n at 13. Because there is no binding authority as to whether late fees on video rentals constitute a "credit transaction," the Court looks to authority on dishonored checks, as the situations are comparable. Like a dishonored check, penalties and late fees arise after what both parties thought was a completed transaction in which something had been purchased.

Defendants rely on Abels v. JBC Legal Group, 428 F.Supp.2d 1023, 1026 (N.D. Cal. 2005), in which a court in this district recently inferred from a Ninth Circuit decision that a dishonored check does not give rise to a "credit transaction." The court stated that "implicit in Charles is a holding that a 'credit requirement' would exclude a dishonored check from the scope of the federal FDCPA." Id. In Charles v. Lundgren & Assocs., 119 F.3d 739, 742 (9th Cir. 1997), the Ninth Circuit held that the district court improperly "graft[ed]" a credit requirement to the federal FDCPA. Id. The Ninth Circuit held that because the FDCPA's application is not limited to collection of debts arising out of the offer or extension of credit, the federal FDCPA applies to dishonored checks. Id. The court in Abels thus inferred that because the Rosenthal Act contains a credit requirement, it cannot apply to dishonored checks. Abels, 428 F.Supp.2d at 1026.

However, there is conflicting authority as to whether dishonored checks constitute a "consumer credit transaction." In a more recent Ninth Circuit bankruptcy case, although not discussing a FDCPA claim, the court directly addressed the linkage between a dishonored check and a credit transaction. The court held that other circuits have found that a creditor's acceptance of what turns out to be a dishonored check transforms what would have been a contemporaneous exchange into a credit transaction, and the court explicitly joined those circuits. In re JWJ Contracting Co., Inc., 371 F.3d 1979, 1081 (9th Cir. 2004). Additionally, Greenway v. Information Dynamics, Ltd., 524 F.2d 1145, 1146 (9th Cir. 1975) supports the idea that dishonored checks are credit transactions by stating that "a check is essentially an extension of credit."

The Court finds that the late fees and/or penalties at issue here involve a "credit

10

transaction," under the Rosenthal Act. Although Plaintiff paid for the video at the time of rental, he allegedly acquired the video for a longer period of time than he paid for, and owes money for that time period. Thus he was allegedly in possession of property for which he had not paid, suggesting that the video was acquired and or retained on credit. See Gouskos v. Aptos Vill. Garage, 94 Cal. App. 4th 754, 759 (2001) (holding that a "consumer credit transaction" must be a "transaction when the consumer acquires something without paying for it"). Because the Court finds that there was a credit transaction, the Rosenthal Act is applicable.

### C. California's Unfair Competition Law

Plaintiff alleges that Defendants violated California's UCL by (1) deceptively representing that Plaintiff and others similarly situated owed money associated with their Hollywood Video accounts, (2) failing to inform Plaintiff that there would be no adverse credit reporting if Plaintiff did not pay the debt, (3) not disclosing that the Trustee was the legal successor to Hollywood Video and/or owner of the alleged debt, (4) violating the FDCPA, (5) violating the Rosenthal Act, and (6) violating the Order. FAC ¶ 81(a)-(f).

Claims may be brought under California's UCL only by those who have "suffered injury in fact and ha[ve] lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code § 17204. In analyzing the change to the UCL's standing requirements following the passage of Proposition 64, the California Supreme Court stated that: "Proposition 64 requires that a plaintiff have 'lost money or property' to have standing to sue. The plain import of this is that a plaintiff now must demonstrate some form of economic injury." Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 323 (2011). There are innumerable ways in which economic injury from unfair competition may be shown. A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary. Id. (citing Hall v. Time Inc., 158 Cal. App. 4th 847, 854-55 (2008)).

Defendants contend in their Motion to Dismiss, and argued again at the motion hearing, that Plaintiff has not changed the basis for UCL standing alleged in the original Complaint, which the Court previously found insufficient. The Court disagrees. In his original Complaint, Plaintiff alleged that "[he] spent a significant amount of time and money reviewing and researching the debt letter, contending with harassing phone calls, trying to contact West Bay, retaining attorneys and filing a complaint." Plaintiff's Opp'n to West Bay's MTD at 17 (dkt. 17). The Court held that the time and money Plaintiff spent in preparing for and filing this suit could not satisfy the injury in fact requirement, that the choice to file the suit was voluntary, and that the injury in fact requirement does not seem to encompass indirect harms of this kind. Order at 12.

Plaintiff now alleges that "[he] specifically lost money as a result of Defendants' unfair trade practices as follows: Plaintiff incurred costs of defense, including attorneys' fees and costs in conjunction with hiring counsel to respond to Defendants' letter." FAC ¶ 82. Plaintiff further states that his attorneys "conducted research into the nature of the alleged debt and the other collection efforts being undertaken by Defendants to provide defensive advice. A letter to Defendants was also drafted asking for further information about the debt." Opp'n at 15. The Court finds Plaintiff has now sufficiently established an injury in fact under the UCL.

Rather than alleging economic harm in bringing suit voluntarily, Plaintiff alleges economic harm arising from the costs incurred to defend against Defendants' collection efforts. FAC ¶ 82. Plaintiff hired attorneys to protect himself after receiving Defendants' letter and to discover the basis and value of West Bay's debt claims. Even if Plaintiff's letter to investigate the alleged debt was sent to Defendants after the suit was filed, taking Plaintiff's allegations as true, Plaintiff's attorneys' services were to defend against Defendants' letter, not file suit. Id. In addition, Plaintiff states that Defendants have repeatedly called Plaintiff in an unfair and harassing manner in order to collect the alleged debt. Id. ¶ 43. The Court previously stated that "costs expended to defend against litigation are very different than costs expended to file suit." Order at 12. The Court finds that

1 Plaintiff's costs, expended to discover whether Plaintiff was required to pay the fees and
2 defend himself against Defendants' collection efforts, constitute economic injury as defined
3 in Kwikset, as an expense that occurred that would have otherwise been unnecessary. See
4 Kwikset, 51 Cal. 4th at 323. Cf. Tourgeman v. Collins Financial Servs. Inc., No. 08-01392,
5 2009 WL 6527758 at *7 (S.D. Cal. Nov. 23, 2009) (holding that the plaintiff's legal defense
6 fees are "out-of-pocket expenses," and thus the plaintiff had adequately alleged an injury in
7 fact"); Swain v. CACH, LLC, 699 F.Supp.2d 1117, 1120-23 (N.D. Cal. 2009) (dismissing
8 the plaintiff's UCL claim but stating that costs to defend a lawsuit, if pled properly, could be
9 sufficient to support standing). Plaintiff has sufficiently alleged economic harm.[3]
10 Plaintiff has sufficiently alleged injury in fact and he has standing under the UCL. See also
11 Hale v. Sharp Healthcare, 183 Cal. App. 4th 1373, 1383, (2010) (stating that "the contours of
12 the injury-in-fact requirement, while not precisely defined, are very generous, requiring only
13 that claimant allege [] some specific, identifiable trifle of injury").

### D. Conflicting Statements Regarding Ownership of Debt

Section 1692e(2) of the FDCPA prohibits "[t]he false representation of the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). The question of whether a misrepresentation in a debt collection notice is false or misleading is judged under the "least sophisticated debtor" standard. Wade v. Reg'l Credit Ass'n, 87 F.3d 1098, 1098-1000 (9th Cir. 1996).

Plaintiff contends that "Defendants violated California's UCL, Cal. Bus. & Prof. Code § 17200 *et seq.*, by not disclosing that the Trustee was the legal successor to Hollywood Video and/or owner of the alleged debt." FAC ¶ 81(a)-(f). Plaintiff further states that "Defendants deceptively did not disclose the legal successor to Hollywood Video – i.e., the Trustee – in order to avoid any association with the Order and not indicate, on the letter, that Hollywood Video was bankrupt. Defendants did so to increase their unlawful collections as

---

[3] Although Defendants argue that if "investigation costs" were sufficient to provide standing, everyone who hires an attorney in response to an alleged violation would having standing, the Court finds more persuasive the reasoning that defending against unlawful collection practices can be an injury in fact.

United States District Court
For the Northern District of California

they knew that Plaintiff . . . would be less likely to pay the alleged debts if they knew they were owed to the trustee for a bankrupt company." Id. ¶ 65.

Defendants contend that Plaintiff still alleges that the inconsistency regarding ownership of the debt is sufficient for a Section 1692e claim, and that the Court already found that this allegation did not state a claim for violation of section 1692e. Reply at 13.

The Court finds that Plaintiff no longer pleads violations of the FDCPA or Rosenthal Act on the basis of an alleged inconsistency regarding the ownership of debt, but rather that Defendants intentionally hid Hollywood Video's bankruptcy and the existence of the bankruptcy trustee in order to increase their debt collections. See FAC ¶ 65. Plaintiff sufficiently alleges that Defendants used a deceptive representation in connection with the collection of debt by contending that Defendant intentionally did not disclose Hollywood Video's bankruptcy in order to increase their unlawful collections. Id. Plaintiff alleges that Defendants hid this information, knowing that Plaintiff and those similarly situated would be less likely to pay debts if they knew Hollywood Video was bankrupt. Id. Although a least sophisticated debtor would not have been misled as to who was the legal successor of the debt, they might not have known that Hollywood Video was bankrupt, and that the Order was relevant to this debt-collection, which might have impacted their reactions to the debt collection. Thus, for purposes of a 12(b)(6) motion, Plaintiff has sufficiently alleged the false representation of the character of the debt under § 1692e.

## IV. CONCLUSION

For the foregoing reasons, this Court GRANTS the Motion to Dismiss as to Harraka and Runci without prejudice; GRANTS 60 days for jurisdictional discovery and filing a Second Amended Complaint if Plaintiff so chooses; and DENIES the remainder of Defendants Harraka's, Runci's, West Bay's, and Runci LLC's Motions to Dismiss.

**IT IS SO ORDERED.**

Dated: July 11, 2012

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE